ALSOP'S CREDI-
TORS, &c.
vs.
BARBEE & WIFE.

CHANCERY

Case 25.

## Alsop's Creditors &c. *vs.* Barbee and Wife.

### ERROR TO MERCER CIRCUIT.

1. On bill filed by an administrator for the settlement of a decedent's estate, it is competent for the creditors to impeach and surcharge a settlement made by commissioners of the county court, with the decedent as guardian, to which they were not parties.

2. A guardian, under the particular circumstances of the case, allowed boarding for his ward, subject to a deduction of one-third the usual charge, for her work and labor in the business of house-keeping, for the benefit of the creditors of the guardian, though his representatives, in the settlement made with the county court, made no charge.

3. A guardian having a large undivided interest with his ward in a slave, which he sold. Held, that it was proper in a settlement with the ward to charge the guardian with the amount of the ward's interest in the slave, and interest thereon, which might be compounded at intervals of two years, and not annual hire and interest on that.

A bill having been filed by the administrator, *de* <span>ALSOP'S CREDITORS, &c.</span>
*bonis non,* of Benjamin Alsop against his heirs and <span>*vs.*</span>
creditors for a settlement of his estate, the principal <span>BARBEE & WIFE.</span>
claim presented against the estate was asserted by S.
P. Barbee and Mary O., his wife, formerly Mary O.
Harris, who had been the ward of said Alsop. The
answer of Barbee and wife, filed in October, 1848,
states their claim to be $1,339 51, which they say will
appear from the settlement of the commissioners of
the Mercer county court, which seems to have been
made by Porter, the first administrator of Alsop, after
the death of the latter. The balance reported in that
settlement is however $1,424 01, as due on the 16th
of May, 1848, and the commissioner in this case, tak-
ing that balance as a basis, has, by the addition of
interest and other charges, so increased the demand
that after crediting it by payments to the amount of
$970 53, made during the pendency of this suit, there
still remained unpaid the sum of $1,259 35, in April,
1852, which being a preferred claim exhausted the en-
tire estate, leaving still a balance due to Barbee and
wife, and leaving other claims to the amount of many
hundred dollars unsatisfied. In the meantime some
of the creditors of Alsop, by their pleadings, impeach
the settlement of the county court commissioners.
They also filed exceptions to the master's report in
this case. But these exceptions were overruled, and
the report approved and followed in the decree. And
they bring the case to this court.

HARLAN, and BALLINGER & SON, for plaintiffs.—

1. A settlement made of the guardian's accounts,
with the county court, upon which the defendants
rely, was made after the death of the guardian,
and probably not attended to by the guardian, and
the commissioner has based his report in favor of
the claim of the ward upon the testimony of the wid-
ow of the guardian, which ought not to have been re-
ceived.

ALSOP'S CREDI-
TORS, &c.
vs.
BARBEE & WIFE.

2. Boarding should have been allowed the guardian, who maintained and boarded the ward from five to twenty-two years of age, except for a short time when at school, as also for clothing furnished.

3. The charge for the negro boy Felix, is too great, as the ward only owned one-fourth interest in the boy.

4. Interest should not have been compounded on the value of the ward's interest in the boy Felix.

5. The claim of Martin Baker for money paid as surety ought to have been allowed. The execution shows that he was but surety.

Fox & BELL and S. DAVIS, for defendants—

Barbee and wife insist—

1. That their claim for a demand due to the wife of Barbee from Alsop, her guardian, has preference in the settlement of his estate, and that the allowance of $200, as one-third of the value of the slave, Felix, sold by the guardian, and also one-third of his hire annually in lieu of interest is proper. 7 *Monroe*, 341; 2 *J. J. Marshall*, 203.

2. That interest should be, as it was, compounded, with biennial rents.

3. That no board should be charged to the ward after his marriage with her mother, as it was not the intention of the step-father and guardian to make such a charge—her services were worth her board—and the widow of the guardian was competent to prove such intention before the auditor. She stands in the attitude of a distributee swearing against her own interest. The administrator has no cause to complain of the decree.

September 12.     Chief Justice MARSHALL delivered the opinion of the court.

The question whether the creditors of a deceased guardian can, in this way, impeach a settlement of the guardian's accounts is, as we believe, a new one in this court; but where, as in the present case, their interest is directly and seriously affected by the settle-

1. On bill filed by an administrator for the settlement of a decedent's estate, it is com-

ment, we do not perceive why they may not surcharge and falsify it in a proceeding for final settlement of the estate, and for final disposition of their claims upon it. If they are concluded by the settlement to which they are no parties, then may the assets which should go wholly or in part to the satisfaction of their claims be diverted by a father or other relative or friend from this object, to swell the estate of a ward, and in some cases, to the benefit, direct or indirect, of the guardian. And if there be ground for assuming that the guardian himself would not do more than justice to his ward, this presumption is certainly much weaker where the settlement is made, not by the guardian himself, but after his death by his representatives, who, from inattention or ignorance of facts, may allow injustice to be done to him. There is some reason to apprehend that the administrator who made this settlement shortly after his intestate's death, and shortly before his own removal from the state, may have been at least ignorant of some matters of law and fact, a knowledge of which should and probably would have affected the settlement. And on this ground, as well as for the more comprehensive reasons before stated, and because the chancellor has a supervising jurisdiction over these settlements, we are of opinion that the right of creditors to impeach them in a proceeding of this kind, though to be allowed and exercised with caution, cannot be properly denied.

It is objected to the settlement, first, that it fails to make any charge against the ward for boarding and maintaining her during nearly seventeen years that she lived in the house and family of her guardian—from tender infancy to the time of her marriage, at the age of twenty-two years. Several witnesses, and among them the mother of Mrs. Barbee, (who, as she will evidently get nothing in any result of this question from the estate of her deceased husband, Alsop, may be supposed to be under a bias in favor of her daughter, which, although it does not render her incompetent, goes to her credit,) expresses the opinion that her

ALSOP'S CREDITORS, &c.
*vs.*
BARBEE & WIFE.

petent for the creditors to impeach and surcharge a settlement made by commissioners of the county court, with the decedent as guardian, to which they were not parties.

ALSOP'S CREDI-
TORS, &c.
vs.
BARBEE & WIFE.

services during the whole period of her living at Alsop's were worth as much as her board; other witnesses, equal in number, express a different opinion. The mother says too that she had heard her husband say he did not intend to charge Mary for board. But a different witness heard him say the contrary. And it is evident, from other statements of Mrs. Alsop herself, that the intention of her husband not to charge board was formed and existed under the impression that he would be able himself to make a settlement in which equal liberality would be shown towards him, and which, as she proves, he expected to result in a balance against him not exceeding one hundred dollars. And not only was he not concluded by this intention, expressed only to his wife, and which perhaps should be excluded as a confidential communication, but considering that the settlement was made after his death, when his interest may not have been fully understood, and his claims may not have been fairly presented, and that the balance thus produced is many times greater than he anticipated as possible, we think justice requires that his estate should receive in a credit upon his accounts a fair remuneration for the cost and trouble of his ward, who is proved to have been treated by him with great indulgence and liberality, and with the same affection shown to his own children.

Besides the opinions expressed by the witnesses that the services of the ward were or that they were not worth her board, there is also some evidence, though vague and indefinite, as to the services rendered. During a considerable part of the time, however, the ward could not have rendered much service on account of her age, and of being in the course of receiving her education, and during the residue of the time it is proved that she received many visitors at the house of her guardian, and was a good deal in company. She sometimes performed the duties of mistress of the house when her mother, who was delicate and sometimes in bad health or confined, was unable

to perform them, and she did some sewing for the family; but there were generally servants about the house. It is difficult, if not impossible, to form a precise estimate of the actual value of her services. We think, however, the truth and justice of the case will be sufficiently approximated, if from the charge of board during the time that she staid in Alsop's family, estimated according to the usual and reasonable price of boarding a female of her age and condition, one-third should be deducted on account of her services in the family, and the account should be made up in this way.

2. It is objected that the county court settlement is erroneous in charging Alsop, as guardian of Mary O. Harris, with one-third of the value of the slave Felix, who had belonged to her deceased brother Francis Harris, and the interest on that third. It appears that Harris, the first husband of Mrs. Harris, and the father of Mrs. Barbee, had had two daughters and a son by his first marriage, all of whom still survive, and that he had two sons, viz: Francis and Walter, and a daughter, Mary O. Harris now Mrs. Barbee, by his second wife, now Mrs. Alsop; that Walter died very young, leaving as his heirs and distributees his brother Francis, his sister Mary O., and his mother, each of whom was entitled to one-third of his third of his father's estate, that is, to one-ninth of this last named estate. At the death of Francis Harris his mother, now Mrs. Alsop, his full sister Mary O. Harris, his two half sisters, and his half brother, children of his father by his first marriage, were his heirs and distributees, and if James Alsop was then alive, who was a half brother by the second marriage of his mother, he also was a distributee. In this last case four of the distributees were of the half-blood, entitled to half shares, and two, viz: his mother and his sister, Mary O. Harris, were entitled to full shares. His estate should consequently have been divided into eight shares, of which his mother and his sister Mary O. would each have been entitled to two,

ALSOP'S CREDI-
TORS, &c.
*vs.*
BARBEE & WIFE.

2. A guardian, under the particular circumstances of the case, allowed boarding for his ward, subject to a deduction of one-third the usual charge, for her work and labor in the business of house-keeping—for the benefit of the creditors of the guardian, tho' his representatives, in the settlement made with the county court, made no charge.

making one-fourth of the estate to each. But if James Alsop was dead before Francis Harris, then there were five distributees of Francis, viz, his mother and his sister Mary O., each entitled to full shares, and three of the half-blood entitled to half shares, in which case the estate should have been divided into seven parts, of which the mother and Mary O. Harris were entitled each to two that is two-sevenths. This last hypothesis we suppose to be the true one. And if so, the ward was entitled to two-sevenths instead of two-sixths, or one-third of the estate of Francis, and the guardian should have been charged accordingly with two-sevenths only of the value of Felix, with its interest. And the charge is also too great if James Alsop was alive at the death of Francis Harris, and afterwards died. The settlement therefore is erroneous in assuming that the interest of Mary O. Harris in the slave Felix, and other portions of the estate of her brother Francis, was one-third, when in fact it was less. But the fact on which, as just noticed, the precise extent of her interest depends, may be ascertained by the master if not agreed by the parties.

The exceptions to the master's report in this case 

3. A guardian having a large undivided interest with his ward in a slave, which he sold. Held, that it was proper in a settlement with the ward to charge the guardian with the amount of the ward's interest in the slave, and interest thereon, which might be compounded at intervals of two years, and not annual hire and interest on that.

include the objections to the county court settlement above noticed. It is further objected, that the report, besides containing the charge of one-third of the value of the slave Felix with interest, also charges one-third of his hire up to the date of the report, with interest thereon. But it appears that the guardian having acquired all the interest in Felix, except that of his ward Mary O., which was less than one-third, sold him many years ago, or rather exchanged him for other slaves at the estimated price of $500, instead of $600, as charged in the accounts. The precise sum or value at the time may be ascertained. And as the guardian had a large undivided interest in the slave, and might have had a sale by order of the chancellor as necessary for a division, we think his disposition of the entire slave should make him liable only for the

ward's portion of the value, with interest, which might be compounded at intervals of two years.

The commissioner's report was therefore erroneous in charging the hire and interest on it, and that charge should have been disallowed.

Wherefore, the decree is reversed, and the cause remanded with directions to re-commit the accounts to the master, for the ascertainment of facts above referred to, and for a re-statement of the accounts, and a decree thereon in conformity with the principles of this opinion.